IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION



| | |
|---|---|
| FIRST TENNESSEE BANK NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) No. 3:15-cv-794 DPJ-FKB |
| CYNTHIA R. KITCHENS, EXECUTOR OF THE ESTATE OF D. GREG KITCHENS, THE D. GREG KITCHENS IRREVOCABLE TRUST, LEIGH KITCHENS, TRUSTEE OF THE D. GREG KITCHENS IRREVOCABLE TRUST, AND ROBYN KITCHENS BIRDSONG, TRUSTEE OF THE D. GREG KITCHENS IRREVOCABLE TRUST, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT TO VOID FRAUDULENT TRANSFERS, OR ALTERNATIVELY, FOR JUDGMENT AGAINST THE FRAUDULENT TRANSFEREE**

TO THE JUDGES OF THE UNITED STATES DISTRICT COURT FOR SOUTHERN DISTRICT OF MISSISSIPPI, NORTHERN DIVISION:

Comes now Plaintiff, First Tennessee Bank National Association, by and through its counsel of record, and for its cause of action against Defendants, Cynthia R. Kitchens, Executor of the Estate of D. Greg Kitchens, the D. Greg Kitchens Irrevocable Trust, Leigh Kitchens, Trustee of the D. Greg Kitchens Irrevocable Trust, and Robyn Kitchens Birdsong, Trustee of the

D. Greg Kitchens Irrevocable Trust, would state the following to the Court:

## I. PARTIES AND JURISDICTION

1. Plaintiff, First Tennessee Bank National Association ("First Tennessee"), is a national banking association organized and existing under the laws of the United States with its principal place of business at 165 Madison Avenue, Memphis, Tennessee 38103.

2. Defendant, Cynthia R. Kitchens, the executor of the Estate of D. Greg Kitchens (the "Estate"), is a resident of Utica, Mississippi, who may be served at 528 Carpenter Street, Utica, Mississippi 39175. The probate of the Estate is currently pending in the Chancery Court of the Second Judicial District of Hinds County, Mississippi under cause no. 2014-68 O/33.

3. On information and belief, Defendant, the D. Greg Kitchens Irrevocable Trust (the "Trust") is an irrevocable trust that was created under the law of the State of Mississippi. Leigh Kitchens and Robyn Kitchens Birdsong are the Trustees of the Trust.

4. On information and belief, Leigh Kitchens, as a Trustee of the Trust, may be served at 601 Carpenter St, Utica, MS 39175.

5. On information and belief, Robyn Kitchens Birdsong, as a Trustee of the Trust, may be served at 601 Carpenter St, Utica, MS 39175.

6. This Court has jurisdiction over this cause of action pursuant, inter alia, to 28 U.S.C. §1332(a) as the amount in controversy exceeds $75,000.00 and is between citizens of different states.

7. Venue is proper in this Court pursuant, inter alia, to 28 U.S.C. §1391.

## II. OVERVIEW OF ACTION

8.   This cause of action involves a request that certain transfer(s) from D. Greg Kitchens to the Trust be voided pursuant to under sections 15-3-101 to 121 of the Mississippi Fraudulent Transfer Act. (<u>See</u> Miss. Code Ann. §15-3-101 *et. seq.)* Alternatively, this cause of action involve a request for a Judgment against the Trust as the recipient of the fraudulent transfer.

9.   The Trust is a private trust created under Mississippi law. There are no public records documenting the creation of the Trust.

## III. FACTS
## A. KBMC LOANS
### 1. KBMC Line of Credit

10.   On or about April 17, 2007, First Tennessee entered into an agreement with Kitchens Brothers Manufacturing Company ("KBMC") whereby First Tennessee would extend a revolving line of credit in the amount of Twelve Million Dollars ($12,000,000.00) to KBMC (the "KBMC Line of Credit"). The KBMC Line of Credit is evidenced by a Promissory Note dated April 17, 2007 in principal amount of $12,000,000.00 (the "KBMC Line Note"). (A true and correct copy of the KBMC Line Note is attached hereto as Exhibit "A.")

### 2. KBMC Term Loan

11.   On or about April 17, 2007, First Tennessee entered into an agreement with KBMC whereby First Tennessee would lend Two Million Seven Hundred Twenty Nine Thousand Two Hundred Sixty Three Dollars ($2,729,263.00) to KBMC (the "KBMC Term Loan"). The KBMC Term Loan is evidenced by a Promissory Note dated April 17, 2007 in

principal amount of $2,729,263.00 (the "KBMC Term Note"). (A true and correct copy of the KBMC Term Note is attached hereto as Exhibit "B.")

### 3. KBMC Guaranty Agreement

12.   In conjunction with the KBMC Line of Credit and the KBMC Term Loan, D. Greg Kitchens ("Greg Kitchens") executed a Continuing and Unconditional Guaranty dated April 17, 2007 pursuant to which he (and others) guaranteed the repayment of all of KBMC's indebtedness to First Tennessee (the "KBMC Guaranty"). (A true and correct copy of the KBMC Guaranty is attached hereto as Exhibit "C.")

### B. CFI LOANS
### 1. CFI Line of Credit

13.   On or about April 17, 2007, First Tennessee entered into an agreement with Cherry Bark Flooring, Inc. ("CFI") whereby First Tennessee would extend a revolving line of credit in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) to CFI (the "CFI Line of Credit"). The CFI Line of Credit is evidenced by a Promissory Note dated April 17, 2007 in principal amount of $2,500,000.00 (the "CFI Line Note"). (A true and correct copy of the CFI Line Note is attached hereto as Exhibit "D.")

### 2. CFI Term Loan

14.   On or about April 17, 2007, First Tennessee entered into an agreement with CFI whereby First Tennessee would lend One Million Dollars ($1,000,000.00) to CFI (the "CFI Term Loan"). The CFI Term Loan is evidenced by a Promissory Note dated April 17, 2007 in principal amount of $1,000,000.00 (the "CFI Term Note"). (A true and correct copy of the CFI Term Note is attached hereto as Exhibit "E.")

M MCP 2689559 v1
2100000-B09459  10/29/2015

### 3. CFI Guaranty Agreement

15. In conjunction with the CFI Line of Credit and the CFI Term Loan, Greg Kitchens executed a Continuing and Unconditional Guaranty dated April 17, 2007 pursuant to which he (and others) guaranteed the repayment of all of CFI's indebtedness to First Tennessee (the "CFI Guaranty"). (A true and correct copy of the CFI Guaranty is attached hereto as Exhibit "F.")

### C. KBI LOAN
### 1. KBI Term Loan

16. On or about April 17, 2007, First Tennessee entered into an agreement with Kitchens Brothers Investments, LLC ("KBI") whereby First Tennessee would lend One Million Two Hundred Seventy Thousand Seven Hundred Thirty Seven Dollars ($1,270,737.00) to KBI (the "KBI Term Loan"). The KBI Term Loan is evidenced by a Promissory Note dated April 17, 2007 in principal amount of $1,270,737.00 (the "KBI Term Note"). (A true and correct copy of the KBI Term Note is attached hereto as Exhibit "G.")

### 2. KBI Guaranty Agreement

17. In conjunction with the KBI Loan, Greg Kitchens executed a Continuing and Unconditional Guaranty dated April 17, 2007 pursuant to which he (and others) guaranteed the repayment of all of KBI's indebtedness to First Tennessee (the "KBI Guaranty"). (A true and correct copy of the KBI Guaranty is attached hereto as Exhibit "H.")

### D. THE FORBEARANCE AND MODIFICATION AGREEMENTS

18. Between April, 17, 2007 and May 22, 2008, KBMC, CFI and/or KBI defaulted under the terms of one or more of the promissory notes as to the KBMC Line of Credit, the

KBMC Term Loan, the CFI Line of Credit, the CFI Term Loan and the KBI Term Loan (the "KB Loans"). Under the cross-default provisions in the loan documents as to the KB Loans, the default on one of the loans created a default as to all of the KB Loans.

19. As a result of the defaults on the KB Loans, on May 22, 2008, First Tennessee, Greg Kitchens, his brothers, KBMC, CFI and KBI entered into a Forbearance and Modification Agreement (the "2008 Modification Agreement"). (A true and correct copy of the 2008 Modification Agreement is attached hereto as Exhibit "I.")

20. In the 2008 Modification Agreement, First Tennessee agreed to forbearance from the exercise of its collection rights as to the KB Loans until June 30, 2008 (the "Forbearance Period").

21. Between June 30, 2008 and August 1, 2009, the expiration of the forbearance period in the 2008 Modification Agreement was extended seven times by letter agreement. The final extension of the forbearance period expired on August 1, 2009.

22. On August 1, 2009, First Tennessee, Greg Kitchens, his brothers, KBMC, CFI and KBI entered into a Forbearance Extension Agreement (the "2009 Extension Agreement"). (A true and correct copy of the 2009 Extension Agreement is attached hereto as Exhibit "J.")

23. In the 2009 Extension Agreement, First Tennessee agreed to extend the expiration of the forbearance period to September 30, 2009.

24. Subsequently, First Tennessee, the Kitchens Brothers, KBMC, CFI and KBI entered into nine (9) amendments of the 2009 Extension Agreement. The forbearance period in the Ninth Amendment to Extension Agreement expired on December 30, 2012.

## E. FINAL DEFAULT

25.    KBMC, CFI and KBI defaulted under the terms of the KB Loans. Among other things, they failed to pay all of the outstanding indebtedness owed on the KB Loans at the expiration of the forbearance period on December 30, 2012.

26.    Pursuant to the terms of the KBMC Guaranty, Greg Kitchens was obligated for all of the outstanding indebtedness owed on the KBMC Line of Credit and the KBMC Term Loan plus accruing interest, post judgment interest, collection costs, attorneys' fees and the costs of this action.

27.    Pursuant to the terms of the CFI Guaranty, Greg Kitchens was obligated for all of the outstanding indebtedness owed on the CFI Line of Credit plus accruing interest, post judgment interest, collection costs, attorneys' fees and the costs of this action.

28.    Pursuant to the terms of the KBI Guaranty, Greg Kitchens was obligated for all of the outstanding indebtedness owed on the KBI Term Loan plus accruing interest, post judgment interest, collection costs, attorneys' fees and the costs of this action.

29.    As of May 30, 2013, the total amount which KBMC, CFI and KBI owed to First Tennessee on the KB Loans was $5,312,216.17 plus attorney's fees and legal expenses.

## F. BANKRUPTCY OF KBMC

30.    On May 30, 2013, KBMC filed a Petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Mississippi (the "KBMC Bankruptcy"). The KBMC Bankruptcy is pending under Case No. #: 13-01710-NPO.

M MCP 2689559 v1
2100000-B09459 10/29/2015

## G. THE FRAUDULENT TRANSFERS

31.     On February 28, 2010, Greg Kitchens provided a financial statement to First Tennessee in which he listed his assets, his liabilities and his net worth (the "2010 Financial Statement"). (A true and correct copy of the 2010 Financial Statement is attached hereto as Exhibit "K.")

32.     In the 2010 Financial Statement, there is no indication of the existence of the Trust.

33.     Greg Kitchens died on September 8, 2014.

34.     The Trust was not created pursuant to the Last Will and Testament of D. Greg Kitchens. (A true and correct copy of the Last Will and Testament of D. Greg Kitchens is attached hereto as Exhibit "L.")

35.     Between February 28, 2010, and September 8, 2014, Greg Kitchens established the Trust.

36.     The Trust is a private trust, and there is no public record as to the creation of the Trust.

37.     First Tennessee initially became aware of the existence of the Trust on or about October 9, 2015, when counsel for KBMC in the KBMC Bankruptcy sent a copy of a draft of a motion for an order authorizing the sale of approximately 403 acres of land in Hinds County, Mississippi (the "Sale Motion") to counsel for First Tennessee. One of the exhibits to the Sale Motion was an offer from the Trust to purchase the land for $806,000.00.

38. On information and belief, between the formation of the Trust and September 8, 2015, Greg Kitchens transferred a significant portion of his assets to the Trust (the "Subject Transfers").

39. There was no consideration for the Subject Transfers from Greg Kitchens to the Trust.

40. On the 2010 Financial Statement, Greg Kitchens showed the following assets:

| | |
|---|---:|
| Liquid Assets | $272,228.00 |
| Non-Liquid Assets | $4,983,539.00 |
| Investments | $2,050,000.00 |
| Personal Property | $370,000.00 |
| Retirement | $950,452.00 |
| Total Assets | $8,626,219.00 |

41. On the 2010 Financial Statement, Greg Kitchens showed the following liabilities:

| | |
|---|---:|
| Bancorp - Vehicles | $16,668.00 |
| Bancorp - Home Mortgage | $44,299.00 |
| First Tennessee Bank | $12,000,000.00 |
| Bancorp South | $1,500,000.00 |
| M & F Bank (B & K) | $500,000.00 |
| Total Assets | $14,060,967.00 |

42. According to the 2010 Financial Statement, as of February 28, 2010, Greg Kitchens' was insolvent as his liabilities exceeded his assets by $5,434,748.00.

43. The Non-Liquid Assets on the 2010 Financial Statement related to closely held family businesses. The value of those Non-Liquid Assets was inflated and overestimated.

44. Between February 28, 2010 and September 8, 2014, Greg Kitchen's financial condition did not improve.

9

## IV - COUNT I- FRAUDULENT TRANSFER

45. The allegations of paragraphs 1 through 44 are adopted by reference as if realleged and repeated herein verbatim.

46. The Subject Transfers from Greg Kitchens to the Trust were fraudulent transfers as to First Tennessee within the meaning of the Mississippi Uniform Fraudulent Transfer Act, Miss. Code. Ann. §15-3-101, *et. seq.*

47. Greg Kitchens made the Subject Transfers with actual intent to "hinder, delay or defraud" First Tennessee in its collection of the guaranteed indebtedness owed on the KB Loans.

48. Greg Kitchens made the Subject Transfers "without receiving a reasonably equivalent value in exchange for the transfer[red assets" while he was a guarantor as to the KB Loans.

49. Greg Kitchens was insolvent at the time of the Subject Transfers.

50. Greg Kitchens actual intent can be established by the following factors:

a. The Subject Transfers were made to the Trust which is an insider or controlled by insiders;

b. The Subject Transfers were concealed;

c. Before the Subject Transfers were made, Greg Kitchens had been threatened with suit as the KB Loans had been in default since May, 2008;

d. The Subject Transfers involved a substantial portion of Greg Kitchens assets;

e. There was no consideration received for the Subject Transfers; and

f. Greg Kitchens was insolvent at the time the Subject Transfers were made.

M MCP 2689559 v1
2100000-B09459 10/29/2015

51.     First Tennessee was a creditor of Greg Kitchens at the time of the Subject Transfers.

52.     First Tennessee cannot state exactly what assets were transferred from Greg Kitchens to the Trust as it is a private trust, there was no public record of its existence until the Sale Motion was provided to counsel for First Tennessee and Greg Kitchens refused to provide financial statements to First Tennessee after February 28, 2010.

53.     Between February 28, 2010, and September 8, 2014, the indebtedness owed on the KB Loans which Greg Kitchens guaranteed ranged from approximately $12,000,000.00 to approximately $5,000,000.00.

54.     Because Greg Kitchens was insolvent at the time of the s a result of the Subject Transfers, because he received no consideration in exchange for the Subject Transfers and because the Subject Transfers were intended to "hinder, delay or defraud" First Tennessee in its collection of the guaranteed indebtedness owed on the KB Loans, pursuant to Miss. Code Ann. §15-3-111(1)(a), the Subject Transfers should be voided as fraudulent transfers.

55.     Once the Subject Transfers are voided, the assets transferred in the Subject Transfers should be declared to be owned by the Estate and delivered to the Estate for inclusion in the Probate Proceeding.

56.     Alternatively, pursuant to Miss. Code Ann. §15-3-113(2), First Tennessee is entitled to a judgment against the Trust and its Trustees for lesser of the value of the assets transferred in the Subject Transfers or the outstanding indebtedness owed on the KB Loans.

M MCP 2689559 v1
2100000-B09459 10/29/2015

57. As of October 15, 2015, the outstanding indebtedness owed on the KB Loans was $5,168,143.23. Interest continues to accrue on the KB Loans. Additionally, pursuant to the promissory notes evidencing the KB Loans, First Tennessee is entitled its reasonable attorney's fees and expenses in pursuing the recovery of the outstanding indebtedness.

THEREFORE, PREMISES CONSIDERED, Plaintiff, First Tennessee Bank National Association, prays that the Court:

a) Issue proper process requiring Defendants, Cynthia R. Kitchens, Executor of the Estate of D. Greg Kitchens, the D. Greg Kitchens Irrevocable Trust, Leigh Kitchens, Trustee of the D. Greg Kitchens Irrevocable Trust, and Robyn Kitchens Birdsong, Trustee of the D. Greg Kitchens Irrevocable Trust, to respond to the Complaint within the time allowed by law;

b) Enter an Order voiding the Subject Transfers as fraudulent transfers;

c) Enter a declaration that once the Subject Transfers are voided, the assets transferred in the Subject Transfers should be declared to be owned by the Estate and delivered to the Estate for inclusion in the Probate Proceeding;

d) Grant a Judgment in favor of First Tennessee and against the Trust and its Trustees for lesser of the value of the assets transferred in the Subject Transfers or the outstanding indebtedness owed on the KB Loan which is more than $5,450,000.00; and

e)  Grant Plaintiff, First Tennessee Bank National Association, such other and further relief, both general and specific, to which this Court may find it is entitled under the premises.

Respectfully Submitted,

*/s/ R. Spencer Clift*

MICHAEL C. PATTON (Tn. Bar #: 12206)
R. SPENCER CLIFT (Miss. Bar #: 100208)

Attorneys for Plaintiff, First Tennessee Bank National Association

OF COUNSEL:

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
20TH Floor, First Tennessee Building
165 Madison Avenue
Memphis, Tennessee 38103
(901) 526-2000